IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.    Case Nos.: 3:15cr26/TKW/EMT
       3:17cv550/TKW/EMT

PAUL R. BLOOM

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 62). The Government filed a response (ECF No. 65), and Defendant filed a reply (ECF No. 66). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a review of the record and the arguments presented, the undersigned recommends that the § 2255 motion be denied without an evidentiary hearing. *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

PROCEDURAL BACKGROUND

Defendant Paul R. Bloom ("Bloom") was charged in a four-count indictment with production, receipt, distribution, and possession of child pornography (ECF No. 12). Represented by Assistant Federal Public Defender Thomas S. Keith, Bloom signed a written plea agreement, a supplement thereto, and a statement of facts, pursuant to which he agreed to plead guilty to production and receipt of child pornography as charged in Counts One and Two of the Indictment and admitted to facts in support of those charges (*see* ECF Nos. 21, 23, 22, respectively). The charges stemmed from Bloom's creation of videos of himself fondling the genitals of a seemingly sleeping nine-year old child he was babysitting, and his intentional downloading of large quantities of child pornography videos, still images, and "cartoons" over the three years prior to the indictment. Magistrate Judge Charles Kahn conducted a thorough plea colloquy, and the district court adopted Judge Kahn's recommendation that the guilty plea be accepted (ECF Nos. 20, 24–25, 54).

Pursuant to the guidelines calculations in the Presentence Investigation Report ("PSR"), Bloom faced a sentence of 262 to 327 months (ECF No. 33, PSR ¶ 84). Defense counsel filed a sentencing memorandum requesting a significant downward variance from the advisory guideline range, at or near the 180-month minimum mandatory on Count One (ECF No. 38). Counsel appended to the memorandum

the result of a polygraph examination purporting to prove that the conduct behind the "production" charge was a one-time incident. The report included a pre-test interview which made no mention of any mental defect or deficiency behind the behavior (ECF No. 38-1 at 2–4).

At sentencing, defense counsel argued vigorously in his client's behalf for a downward departure from the applicable guidelines range. The court nonetheless sentenced Bloom above the guidelines range. It imposed the statutory maximum term of 360 months of imprisonment on Count One and a concurrent statutory maximum term of 240 months on Count Two, followed by a life term of supervised release (ECF Nos. 42, 56).[1] Counsel objected to the sentence again, after it was imposed. The court noted the objections were preserved and stated that if it had made findings based on an improper consideration of the evidence, it would otherwise impose a 327-month sentence, at the top of the applicable guidelines (ECF No. 56 at 42). Bloom's appellate challenge to the reasonableness of his sentence failed (ECF No. 60).

---

[1] In sentencing, the court noted the extreme number of images Bloom possessed, the fact that the downloading activity had occurred over a period of three years, and the fact that the "acts that are depicted in the videos and the images are some of the worst that I have ever seen described in a Presentence Report" (ECF No. 56 at 30).

Case Nos.: 3:15cr26/TKW/EMT; 3:17cv550/TKW/EMT

Bloom timely filed the instant motion to vacate. He now claims his sentence was unconstitutional because counsel failed to seek examination by an independent psychiatrist after his change of plea to provide evidence in mitigation at sentencing.

## ANALYSIS

<u>General Standard of Review</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal. *Stoufflet v.*

Page 5 of 17

*United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Similarly, because a motion to vacate under § 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th

Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When reviewing the performance of an experienced trial counsel, such as Mr. Keith in this case, the presumption that counsel's conduct

was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

<u>Bloom's Ineffective Assistance of Counsel Claim</u>

Bloom asserts that his attorney was ineffective for not calling a mental health expert at sentencing. He points to counsel's comment to Judge Kahn during the plea proceedings that Bloom was "pretty depressed by the situation" (ECF No. 54 at 10). He also points out that he told Mr. Keith he was "hearing voices" before committing the crimes and that he believed the nine-year old victim was his girlfriend (ECF No. 62 at 16) (although he had a girlfriend who was pregnant at the time) (ECF No. 56 at 33). Therefore, he asserts, counsel should have moved the court for appointment of a psychiatrist to present a "mental health defense" or, more appropriately phrased in light of his guilty plea, to present mitigating psychiatric evidence at sentencing (*id*. at 19, 22).

Bloom's suggestion that the presentation of evidence from a psychiatric expert would have changed the outcome of the proceedings is not supported by the record. Until the instant motion was filed, the record was bereft of any evidence that there was any need for such an expert.

Bloom stated under oath during the plea proceedings that he had never been treated for any sort of mental or emotional illness and had never received any sort of psychological counseling (ECF No. 54 at 9–10). Additionally, the United States Probation Office interviewed Bloom between the dates of his plea and sentencing

hearings. The PSR reflects that Bloom reported no "history of mental or emotional health treatment" and further reported "that he is not in need of said treatment" (ECF No. 33, PSR ¶ 74). He also reported a good childhood and that he "was never physically or sexually abused" (*id*., PSR ¶ 69).

At his sentencing hearing, when given the opportunity to address the court, Bloom mentioned no mental health concerns or any other mitigating factors (ECF No. 56 at 25–27). He simply apologized for his criminal conduct and acknowledged how "mortified" he was by his actions (*id*. at 26). Bloom also stated, twice, that no minor had been scarred in any way by his actions (*id*.), a comment the court later cited as demonstrating his very poor insight into what he had done (*id*. at 33). The district court noted there was nothing about Bloom's "personal history or characteristics . . . to explain the behavior" (ECF No. 56 at 31). Neither Bloom nor his attorney made any effort to interject or address this comment.

In an affidavit Bloom submitted in support of the instant motion, he references "hearing voices in his head" (ECF No. 62 at 24). He offers no explanation for why he did not mention this either to the Probation Officer or to the court (at the plea or at sentencing). More significantly, he does not suggest any possible relationship between the alleged voices and either his three-year history of downloading child

pornography or his decision to videotape his sexual contact with a nine-year old child in his custody and care. In the affidavit, Bloom also cites a "troubled past where [he] was constantly bullied in school," as well as physical and emotional abuse by former friends from his teenage years to adulthood (*id.*). Again, he does not explain the purported link between these events and either of the offenses to which he pled guilty in this case. Finally, although Bloom claims in his reply that he was hearing voices before the crimes were committed (ECF No. 66 at 7) and that he was delusional at the time of the offense (*id*. at 9), he does not clarify whether he means before he videotaped his sexual contact with the nine-year old victim or three years earlier when he began downloading what the district court described as some of the worst images of child pornography it had ever seen described in a PSR (*see* ECF No. 56 at 30). Regardless, Bloom has not shown that Mr. Keith performed deficiently by failing to present a mental health expert at sentencing or, if he did perform deficiently is this regard, that the outcome of the sentencing proceeding would have been different.

In his reply, Bloom references caselaw addressing a defendant's sanity at the time of the crime when a defendant's guilt or innocence is still at issue, for instance when a defendant seeks to rely on an insanity defense (*see* ECF No. 66 at 5). This

Case Nos.: 3:15cr26/TKW/EMT; 3:17cv550/TKW/EMT

caselaw is inapposite because, as Bloom was thoroughly advised at the plea colloquy, after he entered his guilty plea his guilt could no longer be challenged. Furthermore, Bloom himself limited the scope of the instant claim to counsel's failure to call a psychiatric expert at sentencing.

In his reply Bloom also asserts that his attorney was operating under an "actual conflict of interest that adversely affected counsel's presentation of his defense" (ECF No. 66 at 11, *citing Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980) (concerning two attorneys' representation of multiple persons charged with the same murders)). He claims, "The record shows that two non-independent psychiatrist[s] [were] sent by the Government and [Mr. Keith] to interview [Bloom]" while he was detained at the Santa Rosa County Jail (ECF No. 66 at 12). Bloom further claims the psychiatrists were not "independent" but were instead "working on behalf of the Government and [Mr. Keith]" (*id.*). Therefore, Bloom claims, Mr. Keith operated under an actual conflict of interest which "compromise[d] [his] duty of loyalty in failing to move for the independent psychiatrist to evaluate [Bloom] and present the delusional compulsion defense" (*id.*, *citing Ford v. Gaither*, 953 F.2d 1296, 1299 (11th Cir. 1992) (holding that the state-appointed psychiatrist's examination was

inadequate under *Ake v. Oklahoma*, 470 U.S. 68 (1985), where the evaluation lacked an assessment of the murder defendant's mental state at the time of the offense)).

Initially, the record does *not* show that Bloom was examined by a psychiatrist, much less that he was examined by a "non-independent" psychiatrist sent by Mr. Keith and/or the Government. And even if Bloom had been evaluated by a psychiatrist at the Government's request or at Mr. Keith's request, such would not create a conflict of interest for Mr. Keith to continue representing him. Indeed, it is customary for defense counsel to seek psychiatric evaluations for defendants when the need for such is evident, *see, e.g.*, 18 U.S.C. §§ 4241, 4242, and doing so does not create a conflict of interest. Stated succinctly, Bloom's argument provides not a scintilla of evidence about a "conflict of interest."

Conclusion

An evidentiary hearing is not necessary to resolve Bloom's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877. Defense counsel ably and vigorously advocated for his client. The record does not support a finding that "no reasonable attorney" would have foregone the use of a psychiatric expert at

sentencing. Even Bloom's self-serving testimony in the instant motion does not establish that calling such an expert would have been warranted.

Furthermore, it is apparent from the court's comments at sentencing—and the above-guidelines sentence it imposed—that the presentation of testimony from a psychiatric expert would not have changed the outcome of the proceedings. Thus, Bloom cannot show prejudice. The court enumerated a litany of factors supporting its above-guidelines sentence including: the number and content of videos and images in Bloom's possession; the fact that some of these were "cartoons" which suggested either an intent to "groom" children to participate in illicit acts or a belief that child abuse was normal and not harmful to children; the three-year duration of his downloading activity; Bloom's production of videos of his sexual contact with a nine-year old child in his custody and care; the court's belief, based on viewing one of the videos, that the child could not have slept through the sexual contact; Bloom's possession of a sex toy that appeared to be a model of a young child; and Bloom's apparently inability to control his behavior despite his professed shame. A history of having been bullied, or even "hearing voices," does not explain or excuse the offense conduct in this case.

Case Nos.: 3:15cr26/TKW/EMT; 3:17cv550/TKW/EMT

For the foregoing reasons, the court finds that Bloom has not shown that counsel's failure to present a psychiatric expert at sentencing was constitutionally deficient, or that, had such testimony been presented, it would have resulted in a sentence lower than that imposed. Therefore, his motion should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 62) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 4th day of February 2020.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:15cr26/TKW/EMT; 3:17cv550/TKW/EMT